## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## MIDLAND DIVISION

| | |
|---|---|
| TERRY WEST, Individually and For Others Similarly Situated, | Case No.  7:20-cv-00098 |
| Plaintiff, | Jury Trial Demanded Collective |
| v. | Action |
| PRIMEXX ENERGY PARTNERS, LTD, | |
| Defendant. | |

## ORIGINAL COMPLAINT

### SUMMARY

1.      Terry West (West) brings this lawsuit to recover unpaid overtime wages and other damages from Primexx Energy Partners, LTD (Primexx) under the Fair Labor Standards Act (FLSA). *See* 29 U.S.C. § 201 *et seq.*

2.      West worked for Primexx as a Wellsite Supervisor (also referred to as a Drilling Superintendent) from approximately October 2018 until March 2019.

3.      West and the other similarly situated workers who worked for Primexx in the last three years regularly worked more than 40 hours a week.

4.      But these workers never received overtime for the hours they worked in excess of 40 hours in a single workweek.

5.      Instead of receiving overtime as required by the FLSA, Primexx classified West and other similarly situated workers as independent contractors and paid these workers a flat amount for each day worked (a day-rate) without overtime compensation.

6.      Neither West, nor any other similarly situated workers who worked for Primexx and received a day-rate, received a guaranteed salary.

7.      This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

## JURISDICTION & VENUE

8.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9.      Venue is proper under 28 U.S.C. § 1391(b).

10.     Primexx conducts substantial business operations in this District and Division.

11.     West worked for Primexx in Midland/Odessa which are in this District and Division.

## PARTIES

12.     West worked for Primexx as a Drilling Superintendent from October 2018 to March 2019.

13.     Throughout his employment with Primexx, West was classified as an independent contractor and paid a day-rate with no overtime compensation.

14.     West's relationship with Primexx was an employer/employee relationship.

15.     West's written consent is attached as Exhibit A.

16.     West brings this action on behalf of himself and all other similarly situated workers who were classified as independent contractors and paid by Primexx's day-rate system.

17.     Although these workers regularly worked more than 40 hours each week, Primexx paid these workers a flat amount for each day worked and with no overtime compensation for the hours they worked in excess of 40 each week in violation of the FLSA.

18.     The collective of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All oilfield workers (including but not limited to Drilling Consultants, Drilling Superintendents, Drilling Supervisors, HSE Consultants, Completions Consultants, Completions Supervisors, and Mud Engineers), employed by, or working on behalf of, Primexx Energy Partners who were classified as independent contractors and paid a day-rate with no overtime at any time during the past three (3) years** (the

Putative Class Members).

19.     The Putative Class Members are easily ascertainable from Primexx's business and personnel records.

20.     Primexx is a Texas limited company and may be served by serving its registered agent for service of process, **Attorney Service Associates, Inc. at 3610-2 N. Josey Ln., Suite 223, Carrollton, Texas 75007**, or wherever it may be found.

### COVERAGE UNDER THE FLSA

21.     At all relevant times, Primexx has been an employer within the meaning of the Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

22.     At all relevant times, Primexx has been an enterprise within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

23.     At all relevant times, Primexx has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1). Primexx has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as tools, cell phones, and oilfield equipment - that have been moved in or produced for commerce.

24.     In each of the last three years, Primexx has had annual gross volume of sales made or business done of at least $1,000,000.

25.     At all relevant times, West and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

26.     Primexx treated West and the Putative Class Members as employees and uniformly dictated the pay practices applied to West and the Putative Class Members.

27.     Primexx's misclassification of West and the Putative Class Members as independent contractors does not alter their status as employees for purposes of the FLSA.

28.     Primexx's uniform day-rate scheme, depriving its workers of overtime compensation for weeks in which these workers work over 40 hours is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

## FACTUAL ALLEGATIONS

29.     Primexx is an oil and gas exploration and production limited company with an extensive operating history.

30.     To provide these services, Primexx hired oilfield personnel (like West) to work on its behalf, including Drilling Consultants, Wellsite Supervisors, Drilling Superintendents, Drilling Supervisors, HSE Consultants, Completions Consultants, Completions Supervisors, and Mud Engineers.

31.     Primexx classified many of these workers (including West and the Putative Class Members) as independent contractors.

32.     But Primexx did not hire these workers on a project-by-project basis.

33.     Rather, Primexx hired and treated these workers just like regular, even if sometimes short-term, employees.

34.     During the relevant period, these workers regularly worked for Primexx in excess of 40 hours a week for weeks at a time.

35.     During the relevant period, these workers worked for Primexx on a day-rate basis.

36.     During the relevant period, these workers were not paid overtime for the hours they worked for Primexx in excess of 40 hours each week.

37.     These workers make up the proposed Putative Class.

38.     While exact job titles and job duties may differ, Primexx subjected these workers to the same or similar illegal pay practices for similar work.

39.     For example, West worked for Primexx as a Drilling Superintendent in Texas.

40.     Primexx management-level employees interviewed West for the position directly.

41.     Primexx management-level employees hired West for the position directly.

42.     West reported directly to Primexx management-level employees.

43.     Throughout his employment with Primexx, West regularly worked more than 40 hours each week without receiving overtime compensation. Instead, West was paid a day-rate for each day worked, regardless of how many hours he worked in a day or week.

44.     During his time with Primexx, West regularly worked more than 12 hours each day, often for weeks at a time.

45.     For example, West worked 14 days straight from January 4, 2019 to January 18, 2019.

46.     During those two weeks, he was paid a day rate for each day worked, regardless of the number of hours he worked.

47.     At times, West would work 36 hours straight.

48.     West did not exercise discretion and judgment as to matters of significance.

49.     To the contrary, West's work was governed entirely by Primexx.

50.     The Putative Class Members performed the same general job duties performed by West.

51.     The Putative Class Members worked the same or similar schedule worked by West, regularly working more than 40 hours each week. West's work schedule is typical of the Putative Class Members.

52.     During the relevant period, Primexx classified West and the Putative Class Members as independent contractors and paid them a day-rate basis with no overtime compensation.

53.     West and the Putative Class Members never received a salary.

54.     If West and the Putative Class Members did not work in a week, they did not receive a guaranteed amount of at least $455.

55.     West and the Putative Class Members received a day-rate regardless of the number of hours or days they worked in a week, even if they worked more than 40 hours in a workweek.

56.     Without the job performed by West and the Putative Class Members, Primexx would not have been able to complete its business objectives.

57.     West and the Putative Class Members were economically dependent on Primexx and relied on Primexx for work and compensation.

58.     Primexx determined the amount and type of compensation paid to West and the Putative Class Members.

59.     Primexx set West's and the Putative Class Members' rates of pay, their work schedules, and effectively prevented them (or outright prohibited them) from working other jobs for other companies while they are working on jobs for Primexx.

60.     West and the Putative Class Members worked in accordance with the schedule set by Primexx.

61.     Primexx prohibited West and the Putative Class Members from subcontracting out the work they are assigned by Primexx.

62.     West and the Putative Class Members had to follow Primexx's policies and procedures.

63.     West and the Putative Class Members had to adhere to the quality standards put in place by Primexx.

64.     West and the Putative Class Members did not substantially invest in the equipment or tools required to complete the overall job to which they were assigned. Instead, Primexx provided West and the Putative Class Members with the equipment, programs, and facilities necessary for them to perform the work required of them.

65.     West and the Putative Class Members did not provide the significant equipment and programs they worked with daily, such as the oilfield equipment, office space, computers, and other necessary equipment.

66.     Primexx made these large capital investments in buildings, machines, equipment, tools, and supplied the business in which West and the Putative Class Members work.

67.     West and the Putative Class Members do not incur operating expenses like rent, payroll, marketing, and insurance.

68.     West and the Putative Class Members did not market their services while employed by Primexx.

69.     While employed by Primexx, West and the Putative Class Members worked exclusively for Primexx.

70.     Primexx set West's and the Putative Class Members' work schedule, which prohibited them from working other jobs for other companies while working on jobs for Primexx.

71.     At all relevant times, Primexx maintained control, oversight, and direction of West and the Putative Class Members, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

72.     Primexx controlled West's and the Putative Class Members' pay.

73.     Likewise, Primexx controlled West's and the Putative Class Members' work.

74.     West's and the Putative Class Members' work had to adhere to the quality standards put in place by Primexx.

75.     West and the Putative Class Members were not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

76.     Primexx knew West and the Putative Class Members regularly worked for 12 or more hours a day for weeks at a time.

77.     Primexx's records reflect the fact that West and the Putative Class Members regularly worked far in excess of 40 hours in certain workweeks.

78.     West and the Putative Class Members did not receive overtime for hours worked in excess of 40 in any of those weeks. Instead, West and the Putative Class Members were paid on a day-rate basis.

79.     Primexx set these workers' schedules and compensation; supervised them; and required them to adhere to strict guidelines, directives, and Primexx's policies and procedures.

80.     The work West and the Putative Class Members performed was an essential part of Primexx's core businesses.

81.     Primexx controlled West's and the Putative Class Members' opportunities for profit and loss by dictating the days and hours they worked and the rates and method in which they were paid.

82.     Primexx controlled all the significant or meaningful aspects of the job duties West and the Putative Class Members performed by requiring them to strictly adhere to Primexx's directives, policies, and procedures.

83.     Primexx exercised control over the hours and locations West and the Putative Class Members worked, the tools and equipment they used, the data they analyzed, and the rates of pay they received.

84.     Even though West and the Putative Class Members may have worked away from Primexx's offices without the constant presence of Primexx's supervisors, Primexx still controlled significant aspects of their job activities by enforcing mandatory compliance with its policies and procedures.

85.     Very little skill, training, or initiative was required of West and the Putative Class Members to perform their job duties.

86.     Indeed, the daily and weekly activities of West and the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by Primexx.

87.     Virtually every job function was predetermined by Primexx, including the tools and equipment used, the data to review and compile, the schedule of work, and related work duties.

88.     Primexx prohibited West and the Putative Class Members from varying their job duties outside of predetermined parameters and required West and the Putative Class Members to follow its policies, procedures, and directives.

89.     West and the Putative Class Members performed routine job duties largely dictated by Primexx.

90.     All of the Putative Class Members performed similar job duties and were subjected to the same or similar policies and procedures which dictated the day-to-day activities they performed.

91.     All of the Putative Class Members worked similar hours and were denied overtime as a result of the same illegal pay practice.

92.     All of the Putative Class Members worked in excess of 40 hours each week and often worked more than 84 hours in a workweek.

93.     Primexx uniformly denied West and the Putative Class Members overtime for the hours they worked in excess of 40 hours in a single workweek.

94.     West and the Putative Class Members were not employed on a salary basis.

95.     West and the Putative Class Members did not, and never did, receive guaranteed weekly compensation of at least $455 irrespective of days worked (i.e., the only compensation they received was the day-rate they were assigned for all hours worked in a single day or week).

96.     Primexx's day-rate policy violated the FLSA because it deprived West and the Putative Class Members of overtime for the hours they worked in excess of 40 hours in a single workweek.

97.     Primexx knew West and the Putative Class Members worked more than 40 hours in a week.

98.     Primexx knew, or showed reckless disregard for whether, West and the Putative Class Members were improperly classified as independent contractors (as opposed to employees).

99.     Primexx knew, or showed reckless disregard for whether, West and the Putative Class Members were not exempt from the FLSA's overtime provisions.

100.    Nonetheless, West and the Putative Class Members were not paid overtime.

101.    Primexx knew, or showed reckless disregard for whether, the conduct described in this Complaint violated the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

102.    West brings this claim as a collective action under the FLSA.

103.    The Putative Class Members were victimized by Primexx's pattern, practice, and/or policy which was in willful violation of the FLSA.

104.    Other Putative Class Members worked with West and indicated they were classified and paid in the same manner (as independent contractors paid a day-rate with no overtime) and performed similar work.

105.    Based on his experiences with Primexx, West is aware that Primexx's illegal practices were imposed on the Putative Class Members.

106.    The Putative Class Members are similarly situated in all relevant respects.

107.    The Putative Class Members are blue-collar workers.

108.    Even if their precise job duties might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime.

109.    The illegal day-rate policy that Primexx imposed on West was likewise imposed on all Putative Class Members.

110.    Numerous individuals were victimized by this pattern, practice, and policy which was in willful violation of the FLSA.

111.    The Putative Class Members were similarly denied overtime when they worked more than 40 hours per week.

112.    The overtime owed to West and the Putative Class Members will be calculated using the same records and using the same formula.

113.    West's experiences are therefore typical of the experiences of the Putative Class Members.

114.    The specific job titles or precise job locations of the various members of the Putative Class do not prevent collective treatment.

115.    West has no interests contrary to, or in conflict with, the Putative Class Members that would prevent class or collective treatment.

116.    Like each Putative Class Member, West has an interest in obtaining the unpaid overtime wages owed under federal law.

117.    A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

118.    Absent a collective action, many Putative Class Members will not obtain redress of their injuries and Primexx will reap the unjust benefits of violating the FLSA.

119.    Further, even if some of the Putative Class Members could afford individual litigation against Primexx, it would be unduly burdensome to the judicial system.

120.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members, as well as provide judicial consistency.

121.    The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

122.    Among the common questions of law and fact are:

    a.   Whether Primexx employed the Putative Class Members within the meaning of the FLSA;

    b.   Whether Primexx's decision to pay a day-rate with no overtime compensation to these workers was made in good faith;

     c.   Whether Primexx's decision to classify these workers as independent contractors was made in good faith;

     d.   Whether Primexx's violation of the FLSA was willful; and

     e.   Whether Primexx's illegal pay practice applied to the Putative Class Members.

123.    West and the Putative Class Members sustained damages arising out of Primexx's illegal and uniform employment policy.

124.    West knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

125.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Primexx's records, and there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective treatment.

126.    Primexx is liable under the FLSA for failing to pay overtime to West and the Putative Class Members.

127.    Consistent with Primexx's illegal day-rate policy, West and the Putative Class Members were not paid the proper premium overtime compensation when they worked more than 40 hours in a workweek.

128.    As part of its regular business practices, Primexx intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to West and the Putative Class Members.

129.    Primexx's illegal day-rate policy deprived West and the Putative Class Members of the premium overtime wages they were owed under federal law.

130.    Primexx was aware, or should have been aware, that the FLSA required it to pay West and the Putative Class Members overtime premiums for all hours worked in excess of 40 hours per workweek.

131.    There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

132.    This notice should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

133.    Those similarly situated employees are known to Primexx, are readily identifiable, and can be located through Primexx's records.

**CAUSE OF ACTION**
**VIOLATION OF THE FLSA**

134.    West realleges and incorporates by reference all allegations in preceding paragraphs.

135.    West brings his FLSA claim as a collective action under 29 U.S.C. § 216(b).

136.    Primexx violated, and is violating, the FLSA by failing to pay West and the Putative Class Members overtime.

137.    Primexx misclassified West and Putative Class Members for purposes of the FLSA overtime requirements.

138.    West and the Putative Class Members were Primexx's employees for purposes of the FLSA overtime requirements.

139.    Primexx was West's and the Putative Class Members' employer under the FLSA. Primexx suffered or permitted West and the Putative Class Members to work for or on its behalf during the relevant period.

140.    Primexx cannot meet its burden to demonstrate West and Putative Class Members are exempt from overtime under the administrative exemption.

141.    Primexx cannot meet its burden to demonstrate the West and Putative Class Members are exempt from overtime under the executive exemption.

142.    Primexx cannot meet its burden to demonstrate West and Putative Class Members are exempt from overtime under the professional exemption.

143.    Primexx cannot meet its burden to demonstrate West and Putative Class Members are exempt from overtime under the highly compensated exemption.

144.    Primexx misclassified West and the Putative Class Members as independent contractors.

145.    Primexx failed to guarantee West and the Putative Class Members a salary.

146.    Primexx failed to pay West and the Putative Class Members overtime.

147.    Primexx paid West and the Putative Class Members a day-rate.

148.    Primexx knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay West and the Putative Class Members overtime compensation.

149.    Primexx's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

150.    Accordingly, West and the Putative Class Members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees and costs.

## JURY DEMAND

151.    West demands a trial by jury.

## PRAYER

WHEREFORE, West, individually, and on behalf of the Putative Class Members respectfully requests that this Court grant the following relief:

      a. An order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) to the Putative Class Members to permit them to join this action by filing a written notice of consent;

      b. A judgment against Primexx awarding West and the Putative Members all their unpaid overtime compensation and an additional, equal amount, as liquidated damages;

c.  Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under the FLSA;

d.  An order awarding attorneys' fees, costs, and expenses;

e.  Pre- and post-judgment interest at the highest applicable rates; and

f.  Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Michael A. Josephson*
**Michael A. Josephson**
Texas Bar No. 308410
**Andrew W. Dunlap**
Texas Bar No. 24078444
**Richard M. Schreiber**
Texas Bar No. 24056278
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
rschreiber@mybackwages.com

**AND**

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**Attorneys for Plaintiffs**